UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-cv-22986-RNS

Assigned to: Judge Scola, Jr.

Referred to: Magistrate Judge Goodman

LAWANDA HOLMES, ANI M. MILLER, and
BRITTANY E. ROXBURY, individually and on
behalf of all others similarly situated,

    Plaintiffs,

v.

BAPTIST HEALTH SOUTH FLORIDA, INC.,
THE BOARD OF DIRECTORS OF BAPTIST
HEALTH SOUTH FLORIDA, INC., THE
RETIREMENT PLAN COMMITTEE OF
BAPTIST HEALTH SOUTH FLORIDA, INC.,
and JOHN DOES 1-30,

    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL
ARBITRATION OR IN THE ALTERNATIVE TO DISMISS THE COMPLAINT
PURSUANT TO RULE 12(b)(1)**

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 2 |
| | A. | The Plan's Arbitration Procedure Is Enforceable | 2 |
| | | 1. Plaintiffs May Not Seek Plan-Wide Remedies Because They Have Waived Their Right to Bring a Representative Action on Behalf of the Plan | 2 |
| | | 2. The Plan Document Is Binding on Plaintiffs | 6 |
| | B. | Plaintiffs Lack Article III Standing to Challenge Funds in Which They Never Invested | 8 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AT&T Mobility, v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................................... 3

*Boley v. Universal Health Servs.*,
    No. 21-8014 (3rd Cir. May 18, 2021) ................................................................................. 9

*Coan v. Kaufman*,
    457 F.3d 250 (2d Cir. 2006) ..................................................................................... 1, 4, 6

*Curtiss-Wright Corp. v. Schoonejongen*,
    514 U.S. 73 (1995) ............................................................................................................. 8

*David v. Alphin*,
    817 F. Supp. 2d 764 (W.D.N.C. 2011) ............................................................................ 10

*Dorman v. Charles Schwab & Co., Inc.*,
    2018 WL 467357 (C.D. Cal. Jan. 18, 2018) ...................................................................... 7

*Dorman v. Charles Schwab Corp.*,
    780 F. App'x 510 (9th Cir. 2019) ............................................................................ 1, 2, 6, 7

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ....................................................................................................... 3

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    571 U.S. 99 (2013) ............................................................................................................. 8

*In re Omnicom ERISA Litig.*,
    2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) ..................................................................... 9

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
    400 F.3d 868 (11th Cir. 2005) ........................................................................................... 3

*Johnson v. Delta Air Lines, Inc.*,
    2017 WL 10378320 (N.D. Ga. Dec. 12, 2017) ................................................................ 10

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ................................................................................................. 1, 5, 6, 9

*Louis v. Aetna Health Inc.*,
    2017 WL 6939166 (M.D. Fla. Jan. 13, 2017) ........................................................... 2, 7, 8

*Marshall v. Northrop Grumman Corp.*,
    2017 WL 2930839 (C.D. Cal. Jan. 30, 2017) .................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

*Orth v. Wisconsin State Employees Union Counsel 24*,
    546 F.3d 868 (7th Cir. 2008) ...........................................................................................7

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...................................................................10

*Randolph v. Green Tree Fin. Corp.-Ala.*,
    244 F.3d 814 (11th Cir. 2001) .........................................................................................3

*Smith v. Board of Directors of Triad Mfg., Inc.*,
    13 F.4th 613 (7th Cir. 2021) ............................................................................................5

*Smith v. Greatbanc Trust Co.*,
    2020 WL 4926560 (N.D. Ill. Aug. 31, 2020) ...............................................................5, 7

*Thole v. U.S. Bank, N.A.*
    140 S. Ct. 1615 (2020) ........................................................................................8, 9, 10

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013) ...........................................................................................................8

*Wilcox v. Georgetown Univ.*,
    2019 WL 132281 (D.D.C. Jan. 8, 2019) ........................................................................10

*Yost v. First Horizon Nat'l Corp.*,
    2011 WL 2182262 (W.D. Tenn. June 3, 2011) ..............................................................10

**STATUTES**

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 et seq................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ...............................................................................................................9, 10

### I. INTRODUCTION

Plaintiffs argue that Baptist Health South Florida, Inc.'s ("BHSF") Motion to Compel Arbitration fails because "the arbitration agreement at issue impermissibly prohibits Plaintiffs from seeking plan-wide relief" and therefore is unenforceable. Dkt. 31, Pls' Opp. Br. ("Opp."), at 1. Importantly, Plaintiffs acknowledge that plan-wide relief is available to plaintiffs who bring a *representative* action pursuant to Employee Retirement Income Security Act of 1974 ("ERISA") section 502(a)(2), 29 U.S.C. § 1132(a)(2). *Id.* at 1, 3, 7. And Plaintiffs do not dispute that the Arbitration Procedure's class-action waiver prohibits them from bringing a class action or any other sort of representative action, and for good reason: courts routinely enforce class-action waivers pressing claims under ERISA and other federal statutes. Stripped of their ability to bring a representative action, Plaintiffs have likewise foregone any right under ERISA to seek plan-wide relief beyond alleged losses to their individual accounts. This is because where a plaintiff does not—or, as here, cannot—proceed with an ERISA representative action, she may not seek plan-wide monetary or injunctive relief under ERISA section 409, 29 U.S.C. § 1109—*i.e.*, relief reserved for lawsuits properly asserted on a class or representative basis. *See Coan v. Kaufman*, 457 F.3d 250, 262 (2d Cir. 2006). Thus, contrary to Plaintiffs' arguments, the Plan does not impermissibly limit the *relief* they may seek when they bring their claims in an individual capacity; rather, the ERISA statute itself sets these limits as interpreted by the courts. *See id.; LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248 (2008); *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 515 (9th Cir. 2019) (*"Dorman II"*).

Plaintiffs' argument that the Plan's Arbitration Procedure somehow does not apply to them fairs no better. Plaintiffs contend that the Arbitration Procedure is inapplicable because Plaintiffs did not "knowingly agree" to it. Opp. at 1. This is wrong. Although the Eleventh Circuit has not

1

addressed this question, other district courts in this circuit and elsewhere have rejected Plaintiffs' argument and held that plan participants are bound by the terms of a plan document—including its arbitration provisions. *See, e.g., Louis v. Aetna Health Inc.,* 2017 WL 6939166, at *5 (M.D. Fla. Jan. 13, 2017) (noting that "district courts in the Eleventh Circuit have found that ERISA plans can include binding arbitration provisions"). And Plaintiffs' consent to the Arbitration Provision was not specifically required because ERISA section 502(a)(2) claims belong to the Plan, not the Plan's participants. *Dorman II*, 780 F. App'x at 513 ("[S]uch claims belong to a plan - not an individual."). Thus, because *the Plan* agreed to arbitrate the section 502(a)(2) claims at issue, the Arbitration Provision should be enforced as to all Plaintiffs irrespective of their individual consent.

Finally, Plaintiffs argue that they have Article III standing to bring their claims simply because they have alleged that they generally invested in funds at issue. That is not enough to establish Article III standing. Critically missing from Plaintiffs' Complaint are allegations regarding the *specific* funds in which they invested or allegations that they suffered a reduction in the value of their Plan accounts due to the supposedly imprudent decision to include those options in the Plan. Because Plaintiffs lack standing to pursue the claims asserted in their Complaint, this Court lacks subject-matter jurisdiction and Plaintiffs' claims should be dismissed.

## II. ARGUMENT

### A. The Plan's Arbitration Procedure Is Enforceable

#### 1. Plaintiffs May Not Seek Plan-Wide Remedies Because They Have Waived Their Right to Bring a Representative Action on Behalf of the Plan

At issue are two provisions in the Plan's Arbitration Procedure. First, the Arbitration Procedure provides that:

> ***All Covered Claims must be brought solely in the Claimant's individual capacity***

2

> ***and not in a representative capacity or on a class, collective, or group basis***. Each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which is not available under ERISA and has the purpose or effect of providing additional benefits or monetary or other relief to any person, including without limitation, any Eligible Employee, Participant or Beneficiary other than the Claimant.

Dkt. 17-1, Decl. of Carol A. Field ("Field Decl."), Ex. A-2, at ¶ 1(b) (emphasis added).

Plaintiffs do not take issue with this provision, but rather merely assert that whether they can bring a class action is "beside the point." Opp. at 9. In any event, Plaintiffs have no basis to contest the enforceability of the class-action waiver because the Supreme Court has made clear that arbitration provisions waiving the right to proceed on a class or representative basis—just like the class action waiver contained in the Plan—are enforceable. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (invalidating California state law that required availability of class-wide arbitration and enforcing class arbitration waiver in arbitration agreement).[1]

Second, the Arbitration Procedure sets forth further limitations applicable to claims brought specifically under ERISA § 502(a)(2)—the section of ERISA under which Plaintiffs bring their claims here. It states:

> [W]ith respect to any claim brought under ERISA Section 502(a)(2) to seek appropriate relief under ERISA Section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's individual Account/benefit resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-

---

[1] Following Supreme Court precedent, the Eleventh Circuit and district courts within it routinely enforce class-action waiver provisions applied to statutory claims. *See, e.g., Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 819 (11th Cir. 2001) (holding that "a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA"); *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005).

3

> rated amount is intended to provide a remedy solely to Claimant's individual Account, and/or (iii) such other remedial or equitable relief as the arbitrator(s) deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any person, including without limitation, any Eligible Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Plan Administrator or Trustee with respect to any Eligible Employee, Participant or Beneficiary other than the Claimant.

Dkt. 17-1, Field Decl., Ex. A-2, at ¶ 1(b)

Plaintiffs contend this provision renders the Arbitration Procedure unenforceable because it impermissibly limits the relief they may seek under ERISA section 409. *See* 29 U.S.C. § 1109(a) (providing that plan fiduciaries who breach their duties are "liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . ."). Plaintiffs assert that "[t]he issue *isn't whether Plaintiffs can bring class claims* but rather whether the statutory claims concerning Plan-wide relief that Plaintiffs have a right to bring are precluded by the Arbitration Agreement." Opp. at 9 (emphasis added).

Plaintiffs are wrong. ERISA section 502(a)(2) provides: "a civil action *may* be brought by . . . a participant . . . for appropriate relief under section 1109 of this title." 29 U.S.C. §1132(a)(2) (emphasis added). Plaintiffs thus fail to recognize that ERISA does not guarantee plan participants the right to seek plan-wide relief when they do not (or cannot) bring their section 502(a)(2) claims on a class or representative basis. The Second Circuit's decision in *Coan v. Kaufman* is instructive. 457 F.3d at 262. There, the Court held that an individual plaintiff cannot seek plan-wide remedies under ERISA section 502(a)(2) without first bringing a representative action. Thus, if a plaintiff forfeits her ability to bring such an action—as Plaintiffs agree they have done here under the Plan's class-action waiver—then she may not seek relief on behalf of the entire plan. This makes sense. Allowing an individual plaintiff to bring a non-representative action

4

seeking plan-wide relief would "create significant practical difficulties and opportunities for abuse." *Id.* For example, the parties and the court would "face a difficult task of ensuring that recovery inures to the benefit of the plan as a whole," instead of "disproportionately, or even exclusively," to the benefit of the individual plaintiff. *Id.* Further, allowing a plaintiff to bring a non-class-action seeking plan-wide relief would "complicate any subsequent litigation" by raising difficult issues of collateral estoppel. *Id.*

That Plaintiffs are limited only to individual relief under the Arbitration Procedure is entirely consistent with the Supreme Court's ruling in *LaRue*. There, the Supreme Court held that a participant in a defined contribution plan may bring a section 502(a)(2) claim for *losses in her own individual account.* 552 U.S. at 255-56 (holding that an individual plaintiff may seek relief under ERISA section 502(a)(2) for fiduciary breaches that impair the value of plan assets in a participant's individual account). In other words, ERISA section 502(a)(2) claims are not inherently representative in the context of a defined contribution plan because a plaintiff can achieve relief based on the plan assets in his or her individual account. *Id*. (recognizing there is no express provision for representative actions in ERISA section 502(a)(2) and holding that "[o]ther sections of ERISA confirm that the 'entire plan' language from *Russell*, which appears nowhere in section 409 or section 502(a)(2), does not apply to defined contribution plans"). Therefore, plan participants have the same ability to bring claims under ERISA section 502(a)(2) for recovery under ERISA section 409, and to obtain the same relief in individual arbitration as in court.

Seeking to sidestep *LaRue* (Opp. at 9 n.5), Plaintiffs rely on a single out-of-circuit case, *Smith v. Board of Directors of Triad Mfg., Inc.,* 13 F.4th 613 (7th Cir. 2021), to argue that the relief-limitation provision alone renders the Arbitration Procedure unenforceable. But *Smith* is not

5

governing law, and at least one other circuit court has reached a different conclusion that is consistent with the Supreme Court's ruling in *LaRue*. In *Dorman II*, 780 F. App'x at 515, the Ninth Circuit held that a similar arbitration provision that included a class-action waiver and limited the plaintiff's relief to individual relief "must be enforced according to its terms[.]" The Ninth Circuit reasoned that "[a]lthough § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court [in *LaRue*] has recognized that such claims are *inherently individualized* when brought in the context of a defined contribution plan like that at issue." *Id.* (emphasis added). Thus, the Ninth Circuit disagrees with Plaintiffs' assertion that *LaRue* is irrelevant when determining whether a plan may limit a plaintiff's relief related to claims brought under section 502(a)(2). Indeed, the Ninth Circuit concluded that limiting a plaintiff to "arbitration on an individualized basis" was "consistent with *LaRue*." *Dorman II,* 780 F. App'x at 514. This Court should do the same.

Under the Arbitration Procedure, Plaintiffs can pursue individual arbitration to recoup any supposed losses to their own individual accounts arising from BHSF's alleged fiduciary breaches, consistent with *LaRue*. But because Plaintiffs may not bring a class action or representative action under the Arbitration Procedure (again, Plaintiffs do not dispute that the class-action/representative action waiver is enforceable), ERISA does not afford them any "federal statutory right" to obtain relief on behalf of the Plan as a whole. Opp. at 6. The Arbitration Provision should therefore be upheld, consistent with *LaRue, Dorman II,* and *Coan.*

    2.  <u>The Plan Document Is Binding on Plaintiffs</u>

Plaintiffs argue that even if the Arbitration Procedure were enforceable, the Plan document is not a binding agreement to arbitrate Plaintiffs' claims because Plaintiffs did not "knowingly agree" to it. Opp. at 1. That is not the law. As a threshold matter, Plaintiffs ignore that ERISA section 502(a)(2) claims belong to the Plan, not the Plan's participants. *Dorman II*, 780 F. App'x

6

at 513 ("[S]uch claims belong to a plan—not an individual."). Therefore, "[t]he relevant question is whether the Plan agreed to arbitrate the § 502(a)(2) claims." *Id*. As did the plan in *Dorman*, the Plan here consented to the Arbitration Procedure by validly adopting a plan amendment incorporating the provision into the terms of the Plan. Because it is the *Plan's* consent that is relevant, the Arbitration Procedure should be enforced as to all Plaintiffs for this reason alone.

Plaintiffs' out-of-circuit caselaw is easily distinguishable. *Id.* at 10-11. In *Orth v. Wisconsin State Employees Union Counsel 24*, the Seventh Circuit held only that an employer may not secretly alter a collective bargaining agreement through an unwritten side deal—an issue entirely irrelevant to Plaintiffs' argument here. *See* 546 F.3d 868, 873-74 (7th Cir. 2008). And in *Smith v. Greatbanc Trust Co.*, an Illinois district court held that under Missouri law a plan participant was not bound by an arbitration provision added to the plan document two years after his employment with the plan sponsor ended. *See* 2020 WL 4926560, at *2-3 (N.D. Ill. Aug. 31, 2020). Plaintiffs do not contend that the same facts exist here, except perhaps in relation to Plaintiff Holmes, who, according to the Opposition, left BHSF in 2019.[2] Opp. at 4. In any event, as Plaintiffs acknowledge, the Seventh Circuit did not address this question on appeal, and thus did not decide whether a plan document is binding on a participant. *Id.* at 10 n.7.[3]

In relying on irrelevant out-of-circuit caselaw, Plaintiffs ignore authority from within *this*

---

[2] Though not required, Plaintiffs Miller and Roxbury undisputedly did consent to the Arbitration Provision by continuing to participate in the Plan after it was adopted by amendment. In *Dorman II*, the Ninth Circuit explicitly noted that "[a] plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect." 780 F. App'x at 512 (citing *Chappel v. Lab. Corp. of Am.*, 232 F. 3d 719, 723-24 (9th Cir. 2000)). At the very minimum, the Arbitration Provision should be enforced as to Plaintiffs Miller and Roxbury.

[3] Plaintiffs also acknowledge that a third decision they rely on, *Dorman v. Charles Schwab & Co., Inc.*, 2018 WL 467357 (C.D. Cal. Jan. 18, 2018), was reversed on appeal by the Ninth Circuit. The Ninth Circuit expressly rejected the district court's holding in that case that a plan document is not a binding agreement for purposes of enforcing an arbitration provision.

7

*circuit* holding that a plan document is a binding agreement under which a participant may be required to arbitrate. In *Louis v. Aetna Health Inc.,* an ERISA action brought in the Middle District of Florida, the court enforced an arbitration provision contained in the governing plan document. 2017 WL 6939166, at *5. There, the court noted that "district courts in the Eleventh Circuit have found that ERISA plans can include binding arbitration provisions," (*id.*), consistent with the principle that the terms in a written plan document bind participants, beneficiaries, and employers. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). Indeed, employers have "large leeway to design [employee benefit plans] as they see fit," *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (citation omitted), and courts may enforce those plans as written. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013).

Here, the Plan's Arbitration Procedure sets forth clear and unambiguous terms that require plan participants to individually arbitrate their ERISA section 502 claims. The Plan consented to the Arbitration Procedure. Further, each Plaintiff is an "Employee (including a former Employee), Participant or Beneficiary [of the Plan]," and as such, they are "Claimants" as defined by the Plan's Arbitration Procedure and are bound by its terms. *See* Dkt. 17-1, Field Decl., Ex. A-2, at ¶ 1(a).

### B. Plaintiffs Lack Article III Standing to Challenge Funds in Which They Never Invested

Plaintiffs assert they have Article III standing to challenge 21 investment options offered by the Plan because they bring this lawsuit in a "representative capacity" under ERISA section 502(a)(2). Opp. at 14. As a threshold matter, Plaintiffs have foregone the right to pursue a representative action pursuant to the Arbitration Procedure as described above. See *supra* at 2-6. But even setting aside that threshold issue, Plaintiffs' response conflates statutory standing with Article III standing. The Supreme Court rejected that argument in *Thole v. U.S. Bank, N.A.*, explaining that "the cause of action does not affect the Article III standing analysis," because

8

"Article III standing requires a concrete injury even in the context of a statutory violation." 140 S. Ct. 1615 at 1620-21 (2020) (quotation and citation omitted). Simply put, Plaintiffs cannot acquire Article III standing by virtue of asserting claims "on behalf of" the Plan under ERISA.

At bottom, Plaintiffs have not alleged any facts relating to the specific investments in which they invested. *See* Compl. ¶¶ 28-30. That is insufficient to confer Article III standing under controlling Supreme Court precedent. The Supreme Court in *LaRue* held that ERISA section 502(a)(2) permits recovery for fiduciary breaches that impair the value of plan assets *in a participant's individual account*. *LaRue*, 552 U.S. at 256. A plaintiff has Article III standing where she asserts a claim in a derivative capacity to recover for injuries to the plan caused by the administrators' breach of their fiduciary duties. This is because the plaintiff has a continuing interest in protecting the plan assets, which consisted in part of the funds in the plaintiff's own individual account. Therefore, under *LaRue,* a plaintiff lacks standing where the alleged poor performance or excessive fees of a fund did not "impair the value of plan assets" in the "individual account" of any of the plaintiff. *In re Omnicom ERISA Litig.,* 2021 WL 3292487, at *12 (S.D.N.Y. Aug. 2, 2021) (quoting *LaRue*, 552 U.S. at 256).[4] Here, Plaintiffs did not allege which specific funds caused losses to their individual accounts. Plaintiffs' meager allegation that they invested in Plan investments "which are the subject of this lawsuit" (Opp. at 12) is not enough to establish standing.

Moreover, Plaintiffs misread the Supreme Court's decision in *Thole*. Plaintiffs seize on the fact that *Thole* involved a defined-benefit plan, not a defined-contribution plan.[5] But the type

---

[4] Plaintiffs rely on *Omnicom* in their Opposition to BHSF's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. 32).

[5] The Third Circuit will soon provide guidance on the question of whether participants in a defined-contribution retirement plan may bring ERISA class-action claims regarding plan investment

of retirement plan at issue had no bearing on the Court's Article III analysis, because, of course, the Constitution does not distinguish between different types of ERISA plans. After all, "[t]here is no ERISA exception to Article III." 140 S. Ct. at 1622 (2020). As such, the question the Supreme Court addressed was whether the plaintiffs suffered any "personal" injury resulting from the alleged breaches of fiduciary duty. *Id*. at 1619. The Court determined the answer was "no" because the plaintiffs had not experienced any actual or imminent reduction in their accrued plan benefits. The same holds true here. Because Plaintiffs do not allege they invested in the specific challenged funds, they have not alleged they suffered a reduction in the value of their Plan accounts (*i.e.*, their benefits) due to the supposedly imprudent decision to include those options in the Plan. Plenty of pre-*Thole* cases reached the same conclusion for the same reasons.[6]

Because Plaintiffs lack standing to pursue the claims asserted in their Complaint, this Court lacks subject-matter jurisdiction. Accordingly, Plaintiffs' claims must be dismissed under Fed. R. Civ. P. 12(b)(1).

---

options in which they did not personally invest. *See Boley v. Universal Health Servs.*, No. 21-8014, Dkt. 12-1 (3rd Cir. May 18, 2021) (oral arguments scheduled in February 2022).

[6] *See, e.g., Patterson v. Morgan Stanley,* 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) (holding that plaintiff had standing to pursue claims only as to the 6 investment options in a 401(k) plan that she selected, but not as to the 7 other investments she never personally held); *Dezelan v. Voya Ret. Ins. & Annuity Co.*, 2017 WL 2909714, at *5 (D. Conn. July 6, 2017) (holding that an ERISA plaintiff asserting fiduciary breach claims "must demonstrate standing for each claim" and "with respect to each asserted claim … a plaintiff must always have suffered a distinct and palpable injury to herself"); *Yost v. First Horizon Nat'l Corp.*, 2011 WL 2182262, at *6 (W.D. Tenn. June 3, 2011) (plaintiff who "never had any holdings in the First Funds . . . did not suffer . . . injury-in-fact and [lacked] standing to sue for any breach of fiduciary duty as to the selection or retention of First Funds as an investment option"); *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *9-10 (D.D.C. Jan. 8, 2019) (same); *Johnson v. Delta Air Lines, Inc.*, 2017 WL 10378320, at *2 (N.D. Ga. Dec. 12, 2017) (same); *Marshall v. Northrop Grumman Corp.*, 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) (same); *David v. Alphin*, 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011) (same), *aff'd*, 704 F.3d 327 (4th Cir. 2013).

Dated: January 4, 2021                      Respectfully submitted,

/s/ *Carol A. Field*
Carol Ann Field (Florida Bar No. 987166)
MORGAN, LEWIS & BOCKIUS, LLP
Wachovia Financial Center
200 S. Biscayne Boulevard, Ste. 5300
Miami, FL 33131
Telephone: (305) 415-3409
Fax: (305) 415-3001
Carol.field@morganlewis.com

Keri L. Engelman (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Telephone: (617) 341-7828
Fax: (617) 341-7701
keri.engelman@morganlewis.com

Brian T. Ortelere (*pro hac vice*)
Jared R. Killeen (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963.5000
Facsimile: (215) 963.5001
brian.ortelere@morganlewis.com
jared.killeen@morganlewis.com

*Attorneys for Defendants*