United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Lawanda Holmes and others, Plaintiffs, | )<br>)<br>) |
| v. | ) Civil Action No. 21-22986-Civ-Scola<br>) |
| Baptist Health South Florida, Inc. and others, Defendants. | )<br>)<br>) |

**Order**

In this Employee Retirement Income Security Act breach-of-fiduciary-duty case, the Defendants filed three motions when responding to the complaint: a motion to compel arbitration, a motion to stay, and a motion to dismiss under Rule 12(b)(6). (ECF Nos. 17, 18, 19.) The Court here addresses only the Defendants' motion to compel arbitration,[1] to which the Plaintiffs filed a response in opposition (ECF No. 31) and the Defendants filed a reply in support (ECF No. 35). After careful review of the briefing and the relevant legal authorities, the Court **grants** the motion. (**ECF No. 17**.)

1. **Background**

Baptist Health South Florida, Inc. employs approximately 23,000 people and, in 1989, created a 403(b) employee retirement plan (the "Plan") to facilitate employee retirement savings. (ECF No. 1 at ¶¶ 33, 53–54); (ECF No. 17-1 at 10.) The Plan is a defined contribution plan where each participant has a separate account based on the amounts individually contributed. (ECF No. 1 at ¶ 55.) The Plaintiffs, who purport to bring this action on behalf of themselves, the Plan, and a putative class of similarly-situated individuals, each participated in the Plan. (*Id.* at ¶ 31.) The Plaintiffs allege that during the Class Period—February 3, 2015 to the date of judgment—the Defendants, each a fiduciary of the Plan, breached their fiduciary duties by failing to review and contain costs and by investing in high-cost investment funds despite the availability of similar funds with lower costs or better performance histories. (*Id.* at 2 n.2, ¶ 20.)

In 2020, the Plan was amended to include, in relevant part, an arbitration agreement. (ECF No. 17-1 at 67.) This amendment was made

---

[1] The Defendants also sought to dismiss the complaint pursuant to Rule 12(b)(1). (ECF No. 17 at 16–19.) As the Court grants the motion to compel arbitration, the Court does not address the Defendants' arguments under Rule 12(b)(1).

pursuant to the Plan Sponsor's express, unilateral ability to amend the Plan. (*Id.* at 47–48, 67.) The arbitration clause provides that "[a]ny claim . . . which arises out of, relates to, or concerns the Plan . . . shall be resolved exclusively by binding arbitration[.]" (*Id.* at 67.) The arbitration agreement forbids arbitrations brought on a representative or class basis. (*Id.* at 68.) Moreover, it precludes individuals that bring an arbitration claim from receiving "remedial or equitable relief" that provides "additional benefits or monetary relief to any person . . . other than the Claimant[.]" (*Id.*)

### 2. Legal Standard

The Federal Arbitration Act ("FAA") governs the validity of an arbitration agreement. *See Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA "embodies a liberal federal policy favoring arbitration agreements." *Id.* (internal quotations omitted). Therefore, courts hold that a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See id.* (internal quotations and citations omitted). A court must enforce an agreement to arbitrate upon a showing that "[1] the plaintiff entered into a written arbitration agreement that is enforceable . . . and [2] the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Relevant here, courts have recognized a "rare" exception preventing enforcement of an arbitration agreement if the agreement "prevent[s] the effective vindication of a federal statutory right." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013); *Smith v. Brd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 621 (7th Cir. 2021).

### 3. Analysis

In arguing that the arbitration agreement is not enforceable, the Plaintiffs raise two challenges. First, the Plaintiffs argue that the arbitration agreement and its waiver of certain Plan-wide remedies violates the "effective vindication" doctrine.[2] Second, the Plaintiffs argue that the arbitration agreement is not

---

[2] The Plaintiffs do not argue that their ERISA claims are not arbitrable, only that this arbitration agreement is void under the effective vindication doctrine. The Court notes that while the Eleventh Circuit has not ruled on the question, most circuit courts have held that ERISA claims are generally arbitrable. *See Louis v. Aetna Health Inc.*, No. 6:16-cv-1922, 2017 WL 6939166, at *3 (M.D. Fla. Jan. 13, 2017) (noting that the 2d, 3d, 5th, 8th, and 10th circuit courts have held that ERISA claims are arbitrable); *see also Smith*, 13 F.4th at 620; *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1112 (9th Cir. 2019).

binding as the agreement was added to the Plan by unilateral amendment in 2020. The Court will address both arguments.

### A. Effective Vindication

The "effective vindication" doctrine is a judge-made exception to the FAA that seeks to balance the competing federal policies in enforcing arbitration agreements and in vindicating plaintiffs' rights to pursue statutory remedies. *See Italian Colors*, 570 U.S. at 235. Though rarely applied, the doctrine holds that courts may invalidate arbitration agreements that "operate as a prospective waiver of a party's right to pursue statutory remedies." *Id.* (cleaned up) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).

The Plaintiffs argue that the Plan's arbitration agreement prevents the effective vindication of rights guaranteed in 29 U.S.C. § 1109(a). In particular, the Plaintiffs argue that they seek Plan-wide relief—such as removal of the Plan's fiduciaries and appointment of new fiduciaries, which is authorized under § 1109(a)[3]—but that the waiver provision of the arbitration agreement forbids such Plan-wide relief. (ECF No. 31 at 13.) The Plaintiffs point to *Smith*, where the Seventh Circuit held that an arbitration clause, which precluded relief that provided "additional benefits or monetary or other relief to any" other individual, was unenforceable under the effective vindication doctrine, as the clause prohibited plan-wide relief that ERISA expressly permitted. *See Smith*, 13 F.4th at 615, 621.

The Defendants argue that such Plan-wide relief is only available to those who bring a class action on behalf of the Plan. And, the Defendants argue, as courts have held that class-action arbitration waivers are permissible, any waiver of a remedy unique to representative or class actions is also permissible. *See Randolph v. Green Tree Fin. Corp.*, 244 F.3d 814, 819 (2001) (holding that "a contractual provision to arbitrate [Truth in Lending Act] claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA").

The Plaintiffs point to no authority where the Eleventh Circuit has applied the "effective vindication" doctrine to void an arbitration clause. And the Eleventh Circuit has expressed a hesitancy to do so. *See Sierra v. Cruise Ships Catering and Servs., N.V.*, 631 F. App'x 714, 718 (11th Cir. 2015) (declining to apply the effective vindication doctrine and noting that the

---

[3] Section 1109(a) provides various types of relief, including "other equitable or remedial relief as the court may deem appropriate[.]" *See* 29 U.S.C. § 1109(a).

Supreme Court has never applied it); *cf. Randolph*, 244 F.3d at 818–19 (declining to "make the same mistake again" by "giving too little weight to the FAA's pro-arbitration policy").

Given the FAA's pro-arbitration policy, as well as the rarity with which courts apply the effective vindication doctrine, the Court declines to follow the *Smith* rationale and holds that the arbitration agreement at issue is valid and enforceable. While the arbitration agreement prohibits the recovery of some Plan-wide monetary relief, such relief is only available to those who bring a representative or class action. *See Kennedy v. Geronemus*, No. 10-61153-CIV, 2010 WL 11549886, at *5 (S.D. Fla. Nov. 4, 2010) (Altonaga, J.) (holding that a claim under Section 1132(a)(2) "must be brought in a representative capacity"); *see generally LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (holding that Section 1109(a) only provides remedies for plan injuries but that individuals may recover for harm to that participant's individual account in a defined contribution plan). And as the Eleventh Circuit has already held that a waiver of the right to bring a class action in arbitration is permissible, the concomitant waiver of remedies associated with class actions is also permissible. *Cf. Randolph*, 244 F.3d at 819.

In any event, even if the Court were to follow the Seventh Circuit's rationale in *Smith*, the arbitration clause at issue here is narrower than the one in *Smith*. The arbitration clause in *Smith* prohibited relief that provided "additional benefits or monetary *or other relief*" to anyone besides the claimant. *See Smith*, 13 F.4th at 616 (emphasis added). Therefore, certain relief, such as the removal of a fiduciary, was completely barred, as no claimant in an arbitration would have been able to obtain such remedy under the arbitration clause. *See id.* at 621. Here, the arbitration clause only prohibits relief that provides "additional benefits or monetary relief to any person" other than the claimant. (ECF No. 17-1 at 68.) Therefore, the specific relief that the Plaintiffs argue has been barred—the ability to seek removal and appointment of the Plan's fiduciaries—is not barred by the arbitration clause. While that sought-after relief has a Plan-wide effect, it does not provide additional benefits or monetary relief as prohibited. Thus, while the arbitration clause in *Smith* completely denied some types of statute-authorized relief to the Plan, the clause here does not, as individual claimants can each recover the harm to their defined contribution accounts, and they can recover Plan-wide relief that does not provide additional benefits or monetary relief to others. For this reason, the arbitration agreement here is valid and enforceable.

### B. Unilateral Amendment

Next, the Plaintiffs contend that the arbitration agreement is not binding on them because they did not knowingly agree to it. The Plaintiffs argue that the arbitration agreement was unilaterally adopted by amendment in 2020 by Baptist Health, as Plan Sponsor, and that no Plan participant was given the option of consenting to the amendment. (ECF No. 31 at 16–17.) In support of their argument, the Plaintiffs primarily rely on two district court opinions, one of which was affirmed on different grounds by the Seventh Circuit and one that was reversed by the Ninth Circuit. *See Smith v. Greatbanc Trust Co.*, No. 20 C 2350, 2020 WL 4926560, at *2–3 (N.D. Ill. Aug. 21, 2020), *aff'd*, *Smith*, 13 F.4th at 623; *Dorman v. Charles Schwab & Co. Inc.*, No. 17-cv-00285, 2018 WL 467357, at *5 (N.D. Cal. Jan. 18, 2018), *rev'd*, *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019). Despite the lack of case support, the underlying principle is potent—permitting the adoption of a binding arbitration agreement by unilateral amendment by the Plan Sponsor, a fiduciary accused of a breach of fiduciary duty, would be akin to letting the "fox guard the henhouse." *See Brown v. Wilmington Trust, N.A.*, No. 3:17-cv-250, 2018 WL 3546186, at *5 (S.D. Ohio July 24, 2018) (quoting *Dorman*, 2018 WL 467357, at *5)).

Despite the unseemly nature of requiring Plan-participant Plaintiffs to arbitrate a claim that they never personally agreed to arbitrate, the Plan agreed to arbitrate. Section 1109(a) claims belong to the Plan. *See LaRue*, 552 U.S. at 253 (holding that Sections 1109(a) and 1132(a)(2) permit individuals to "bring actions on behalf of a plan"); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (holding that "actions for breach of fiduciary duty [must] be brought in a representative capacity on behalf of the plan as a whole"). Therefore, the relevant inquiry is not whether individual participants agreed to the arbitration agreement but whether the Plan agreed to arbitrate. *See Dorman*, 780 F. App'x at 513 (holding that Section 1109(a) claims "belong to a plan—not an individual" and therefore courts must look to "whether the Plan agreed to arbitrate"). Here, the Plan consented to the 2020 amendment, which added the arbitration clause, as the Plan expressly provided for unilateral amendment by the Plan Sponsor. *See id.*; (*see* ECF No. 17-1 at 47–48, 67.) As the Plan consented to the arbitration agreement, the Plan, and those that bring claims on its benefit, must arbitrate.

Last, the Plaintiffs also argue that the arbitration agreement can only be binding on the Plaintiffs who were participating in the Plan at the time that the arbitration clause was added. *Cf. Dorman*, 780 F. App'x at 512 (holding that "a plan participant agrees to be bound by a provision in the plan document when

he participates in the plan while the provision is in effect"). Here, Plaintiff Lawanda Holmes was a participant in the Plan during the Class Period, but she was terminated and removed all her funds from the Plan in September 2018, before the arbitration agreement was added to the Plan. (ECF No. 31-1 at ¶ 4.)

However, as discussed above, the Plaintiffs' breach-of-fiduciary-duty claims are brought on behalf of the Plan. *See Russell*, 473 U.S. at 142 n.9. While Plaintiff Holmes never agreed to arbitrate and was not put on notice of an agreement to arbitrate while she was a participant in the Plan, the Plan agreed to arbitration, and any claims on behalf of the Plan, including those brought by Plaintiff Holmes, must be brought in arbitration.

For the reasons set out above, the Court holds that the Plan consented to arbitrate and that the Plaintiffs who bring claims on behalf of the Plan must arbitrate their claims.

### 4. Conclusion

In total, the Court **grants** the Defendants' motion to compel arbitration. (**ECF No. 17**.) The Court orders the parties to submit their disputes to arbitration. This case is **stayed** pending arbitration, and the Court orders the parties to advise the Court once the arbitration is terminated or once the claims are otherwise resolved. In the meantime, the Clerk is directed to **administratively close** this case. All pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on January 20, 2022.

Robert N. Scola, Jr.
United States District Judge